UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:23-CR-0130-FDW |
| | ) | |
| v. | ) | **FACTUAL BASIS** |
| | ) | |
| **DANA BRADLEY** | ) | |
| | ) | |
| | ) | |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2. The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties understand and agree that this Factual Basis shall serve as the parties' joint "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

### Relevant Individuals and Entities

1. MARLIN HERSHEY was a resident of the Cornelius, North Carolina area and was business partners with BRADLEY. HERSHEY owned and controlled numerous entities. Neither HERSHEY, nor any of the entities he controlled, were registered as brokers with the United States Securities and Exchange Commission ("SEC").

2. DANA BRADLEY was a resident of the Cornelius, North Carolina area and was business partners with HERSHEY. BRADLEY owned and controlled numerous entities. Neither BRADLEY, nor any of the entities he controlled, were registered as brokers with the SEC.

3. Performance Holdings, Inc. ("Performance Holdings") was a corporation with its principal place of business in Huntersville, North Carolina. HERSHEY and BRADLEY controlled Performance Holdings and used it to offer investments in other companies with which they were affiliated.

4. Performance Retire on Rentals, LLC ("Performance Retire") was a limited liability company with its principal place of business in Huntersville, North Carolina. HERSHEY and BRADLEY controlled Performance Retire and represented to investors that it was created to lend

money to another entity, Retire on Rentals, for the acquisition, renovation, leasing and sale of foreclosed single-family properties in the Charlotte, North Carolina area.

5. Bluestone Investments ("Bluestone"), also known as Retire on Rentals, was a business located in Charlotte, North Carolina that was controlled by S.M.

6. Distressed Lending Fund, LLC ("DLF") was a limited liability company with its principal place of business in Huntersville, North Carolina. HERSHEY and BRADLEY controlled DLF and represented to investors that it was created to lend money to third parties, including Greenscope Properties, LLC, to acquire, renovate and sell distressed real estate.

7. Greenscope Properties, LLC ("Greenscope") was a limited liability company based in Charlotte, North Carolina. E.L. was the manager of Greenscope, and J.S. was E.L.'s partner in Greenscope.

8. Genero Properties, LLC ("Genero") was a limited liability company based in Charlotte, North Carolina. E.L. was the manager of Genero. E.L. started Genero after he split with his partner J.S.

9. HERSHEY and BRADLEY created, and/or caused to be created, various private placement memoranda to offer Performance Retire and DLF securities to potential investors (the "PPMs"). HERSHEY and BRADLEY caused copies of the PPMs to be sent to potential investors.

10. The business model of Performance Retire and DLF involved investors loaning funds to those companies, which in turn loaned funds to Bluestone or Greenscope/Genero, which used them to buy, repair and resell residential homes. HERSHEY and BRADLEY caused investors to enter into various loan agreements with Performance Retire and DLF (the "Loan Agreements"). The Loan Agreements were signed by the investors and by HERSHEY or BRADLEY on behalf of Performance Retire and DLF.

11. From 2009 to early 2013, Bluestone used funding by Performance Retire to buy, repair, and resell numerous homes in Charlotte. However, by no later than May 2013, Bluestone defaulted on its obligations to Performance Retire. HERSHEY and BRADLEY did not disclose this material information to investors in Performance Retire, including those deciding whether to extend or redeem their investments.

12. HERSHEY and BRADLEY also continued to sell new investments in Performance Retire after May 2013 without disclosing material information, including that Bluestone had defaulted on its obligations to Performance Retire and had been administratively suspended by the North Carolina Secretary of State. In so doing, investors relied on PPMs and Loan Agreements that omitted material information and/or contained false and/or misleading statements about material matters.

2

13. Regarding DLF, in or around December 2013, DLF lent money to Greenscope and/or Genero to purchase a real estate property (the "Vernon Property"). The Vernon Property project was beset by delays and significant cost overruns.

14. By no later than January 2015 and several times thereafter in 2015, Genero and E.L. needed to borrow money from HERSHEY and BRADLEY, including via electronic financial transactions, to avoid defaulting on the loan from DLF.

15. By no later than May 2016, HERSHEY was aware that the terms of DLF's agreement with Genero and E.L. were unsustainable and that Genero and E.L. would owe a substantial debt to DLF even after the sale of the Vernon Property.

16. In April and May 2016, several DLF investors were considering whether to extend their DLF securities for another term. As part of the conspiracy, HERSHEY and BRADLEY failed to disclose material information to these investors, including information concerning the financial difficulties of DLF and Genero or the full scope of the problems with the Vernon Property.

17. In August 2016, the Vernon Property project was completed and the property was sold. Shortly thereafter, on or about August 19, 2016, E.L. filed for bankruptcy. At the time E.L. filed for bankruptcy, Genero owed DLF more than $850,000.

18. In late August and early September 2016, HERSHEY and BRADLEY caused DLF to pay off some DLF investors in full, while more than a dozen remaining investors extended their DLF investments. As part of the conspiracy, HERSHEY and BRADLEY failed to disclose material information to these investors, including information concerning the financial difficulties of DLF and Genero, prior to their extension of their investments.

19. In furtherance of the conspiracy, HERSHEY and BRADLEY used the means and instrumentalities of interstate commerce, including in some cases interstate wire communications and electronic financial transactions, and acted with an intent to defraud. Further, HERSHEY and BRADLEY each knowingly and willfully joined the conspiracy with an intent to further its purpose, *i.e.* to commit wire fraud in violation of Title 18, United States Code, Section 1343.

20. As of early 2018, after BRADLEY became aware of the United States' investigation, BRADLEY had caused approximately seven victims whom had invested in Performance Retire and DLF to suffer approximately $210,000 in net losses.

21. HERSHEY and BRADLEY, through Performance Retire and DLF, continued to make payments to investors/victims after the United States initiated its investigation. Accordingly, based upon the information currently available to the United States, the total amount of restitution jointly and severally owed by HERSHEY and BRADLEY is approximately **$333,791.96**, as set forth below:

| | |
|---|---|
| E.R. | $4,874.23 |
| P.M. | $10,415.26 |
| K.G. | $10,481.90 |
| K.S. & E.S. | $9,631.75 |
| K.W. | $60,163.48 |
| P.D. | $7,500 |
| S.P. | $16,433.39 |
| S.S. | $31,000 |
| C.L. | $93,000 |
| R.S. | $16,433.36 |
| S.O. | $18,000 |
| S.S. | $36,150.14 |
| T.H. | $19,708.35 |

DENA J. KING
UNITED STATES ATTORNEY

*/s/ Daniel Ryan*

DANIEL RYAN
ASSISTANT UNITED STATES ATTORNEY

*/s/ Taylor G. Stout*

TAYLOR STOUT
ASSISTANT UNITED STATES ATTORNEY

## Defendant's Counsel's Signature and Acknowledgment

  I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

_____    DATED: 5/3/2023
Chris Fialko, Attorney for Defendant